CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
JAN 27 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MICHAEL E. THURSTON, | ) |
| | ) Civil Action No. 5:05CV00036 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff was not under a disability at any time prior to the final decision of the Commissioner. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Michael E. Thurston, was born on February 15, 1966 and eventually completed his high school education. Mr. Thurston has worked as a carpenter, millwork hand, and flooring installer. He last worked on a regular and sustained basis in 2002. On October 9, 2002, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. Mr.

Thurston alleged that he became disabled for all forms of substantial gainful employment on March 20, 2002 due to back and leg pain, and a twisted disc. He now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that Mr. Thurston met the insured status requirements of the Act through the fourth quarter of 2002, but not thereafter. See generally, 42 U.S.C. §§ 414 and 423. Consequently, plaintiff is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before December 31, 2002. See generally, 42 U.S.C. § 423.

Mr. Thurston's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 22, 2004, the Law Judge also ruled that Mr. Thurston is not disabled. The Law Judge found that plaintiff suffers from a discogenic/degenerative back disorder which produces pain in the lower extremities. Because of this condition, the Law Judge determined that Mr. Thurston is disabled for all of his past relevant work roles. However, the Law Judge found that plaintiff retains sufficient functional capacity to perform a limited range of sedentary exertion. The Law Judge assessed Mr. Thurston's residual functional capacity as follows:

> The claimant has the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently. He can walk and stand two hours and sit 6 hours in an 8-hour day, alternating sitting and standing at necessary intervals. He can occasionally bend, crouch, stoop, kneel, squat, and climb ramps and stairs. He is to avoid ropes, ladders or scaffolds. He can use his cane in aid of ambulation. (TR 27).

Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge held that Mr. Thurston retains sufficient functional capacity to perform several specific sedentary roles existing in

significant number in the national economy. Accordingly, the Law Judge ultimately concluded that plaintiff is not disabled, and that he is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Mr. Thurston sought review of the Administrative Law Judge's opinion by the Social Security Administration's Appeals Council. In connection with his request for review, plaintiff submitted additional medical evidence. However, the Appeals Council adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, plaintiff has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mr. Thurston experienced a twisting injury to his back while working in March 2002. Since that time, he has continued to complain of severe back pain with radiation to the lower extremities, especially on the right. However, lumbar spine x-rays and MRIs have proven totally negative for signs of any mechanical defect. While a consultative physician, a treating chiropractor, and a treating nurse practitioner have all produced

3

findings which assume that plaintiff's complaints are credible, the physical limitations described by these medical sources were taken into account by the Law Judge in formulating hypothetical questions for the vocational expert. The vocational expert identified several specific sedentary work roles which Mr. Thurston could be expected to perform, and which permit the sit/stand option which is required under the findings of the consultative physician and the nurse practitioner. The court believes that the Law Judge properly relied on the testimony of the vocational expert in concluding that Mr. Thurston retains sufficient functional capacity for several specific alternate work roles. It follows that the final decision of the Commissioner must be affirmed.

Mr. Thurston injured his back while carrying sheet rock in March 2002. He went to the local emergency room for treatment of severe lower back pain. On March 26, 2002, x-rays of the lumbar spine and right hip proved totally negative, other than for indications of early degenerative process. On April 12, 2002, an MRI of the lumbar spine was also read as negative. Throughout most of 2002, plaintiff was treated by Dr. Scott Berman, a chiropractor. While Dr. Berman attempted a number of remedial procedures, plaintiff continued to complain of severe and debilitating pain.

The disability determination services referred Mr. Thurston to Dr. John Ellis for a consultative evaluation. Dr. Ellis saw plaintiff on February 1, 2003. By way of history, Dr. Ellis reported as follows:

> Mr. Thurston is a 36-year old Caucasian male with back problems. He was a carpenter and was working on the job in March of 2002 when he injured his back, he relates. He said that he was treated by a doctor and released to work and went back the next Monday. He was unloading dry wall when he started having severe [pain] on the right SI area, generally the same area as that on the previous Friday. He said the pain became worse and he went to a chiropractor as suggested by his employer and, in fact, [is] still going. He says the problem, however, has never resolved and, as a matter of fact, has gotten much worse. He has been treated with various modalities by the chiropractor including stimulator placed on his ear, he says. He also sought an orthopedic surgeon who said he had nothing to add. Mr. Thurston also has some knee problems on the right

4

side and has had fluid aspirated from that one side and a steroid shot placed in that once but his main problem is his back. An MRI, however, showed no ruptured disc, he said. At any rate, he has problems getting around. He uses a cane, limps and has a severe pain on the right SI area down the leg that has never abated. Upper body is fine, he says. At present, he takes no medicine except over the counter because he has no insurance. (TR 196).

On clinical examination, Dr. Ellis noted some limitation of motion, but he considered the findings to be inconsistent with a ruptured disc. Dr. Ellis went on to offer the following physical assessment:

> His overall impression appears to be an injury to the SI joint area on his original work injury in spring of last year which has never resolved. Unfortunately, his weight is not helping him but he says it was the injury that caused the considerable weight gain afterwards. Peripheral joints, otherwise, are normal at the present time although the right knee does show a little bit of puffiness. Under functional information, Mr. Thurston gave good cooperation and effort. This gentleman has problems with sitting. He could be expect [sic] to sit about 30 minutes at a time. Standing and walking are more of a problem and he walks with a limp. He uses a cane in his right hand. I would expect him to be able to walk 15 to 20 minutes at a time with breaks. He does use a cane and I believe it is necessary and able to have much more trouble on uneven terrain. Lifting and carrying are limited at the present time to sedentary, i.e., about 10 pounds with limited sitting and walking for brief periods. On sitting, anything over 15 and 20 minutes, he has to have frequent shifts of position. Upper body is normal as noted. He can do activities requiring reaching, handling, feeling, grasping and fingering frequently. He is limited by his low back problems. Unfortunately, this type of mechanical low back problems oftentimes highly requires some therapy and cause a great deal of morbidity and are never really effectively addressed. This gentleman seems credible and it is certainly reasonable that injury described as he described it would resolve in this pain pattern and residual impairment. (TR 197-98).

Additional x-rays studies of the lumbar spine on June 17, 2003 were totally negative. Mr. Thurston sought emergency treatment for back discomfort in October 2003. At that time, he was said to be suffering from myofascial strain.

Mr. Thurston was seen at the St. Luke Community Clinic on several occasions in 2003 and early 2004. Crystal Morris, who is apparently a nurse practitioner, completed a statement of plaintiff's ability

5

for work-related activities on March 15, 2004.[1]  The statement was later approved by the clinic physician.  In the statement, it was noted that Mr. Thurston is unable to lift more than about 10 pounds and that he requires a cane for ambulation.  Plaintiff was said to require alternate sitting and standing during the course of a workday.  Limitations were noted in plaintiff's capacity to use his lower extremities.  He was said to be incapable of climbing, balancing, kneeling, crouching, crawling, and stooping.  On the other hand, Mr. Thurston was said to have unlimited ability to finger and feel.  It was noted that he could frequently reach and constantly handle objects.  The nurse practitioner indicated that plaintiff suffers from chronic low back pain due to a twisted spine, and that objective studies were negative for stenosis, disc narrowing, disc bulging, or disc protrusion.

Robert Lester testified at the administrative hearing as a vocational expert.  The Law Judge propounded several hypothetical questions to Mr. Lester, which assumed residual functional capacity for light exertion.  The vocational expert identified several potential jobs.  The Law Judge then posed questions which assumed a residual functional capacity for sedentary exertion.  The transcript of the hearing reveals the following exchange between the Law Judge and the vocational expert:

> Q (ALJ): Hypothetical number two, for the sake of this hypothetical again, using the record – the medical record as a guideline for the limitations and considering the medical treatment, and medications being in the testimony assume an individual who is 37 years of age, and has a high school education, and the past work experience in the housing construction trade, including floor installation and carpentry.  Assume that this individual has the capacity to lift and carry up to 10 pounds occasionally, walk or stand up to two out of eight hours, sit up to six out of eight hours, and normal work breaks.  Assume further that this individual should avoid more than occasional bending from waist toward the floor, crouching, and stooping, kneeling, squatting, climbing ramps and stairs.  No climbing of ropes, ladders or scaffolds.  Are there jobs this individual could perform?

---

[1] The statement was completed after the administrative hearing in this case.  Consequently, the Law Judge was unable to use the statement in questioning the vocational expert.

6

| | |
|---|---|
| A (VE): | Sedentary unskilled work available would include final assembly work. 46,000 such positions exist in the national economy, and some 5,000 in the local economy. |
| Q: | I'm sorry. How many locally? |
| A: | 500. Cashiering positions such as an order clerk in the food and beverage industry. 137,000 nationally, some 1,200 locally. Again, those are sedentary, unskilled positions consistent with the descriptions as provided in <u>The Dictionary of Occupational Titles</u>. |
| Q: | Okay. Hypothetical 1A, add to the foregoing hypothetical the limitations the individual should be able to alternate sitting and standing in necessary intervals. |
| A: | There would be no change in my opinion with the same comments concerning <u>The Dictionary of Occupational Titles</u>. |
| Q: | Hypothetical 2B, if you – if I add that the individual requires to use a cane for ambulation, would that [inaudible]? |
| A: | No, sir. (TR 286-87). |

Through a third set of hypothetical questions, the Law Judge asked the vocational expert to assume the limitations suggested by plaintiff's testimony. In response, the vocational expert indicated that no jobs would be available.

Mr. Thurston also testified at the hearing. Mr. Thurston related that his left leg is a lot smaller than his right. (TR 263). He noted that he has never been hospitalized. (TR 273). He has seen a physical therapist who gave him a cane to help in ambulation. (TR 273). He testified that his back has been twisted since he injured it at work. (TR 273). He has cut back on medical services because he is unable to afford the costs. (TR 274). He indicated that, even on good days, he is unable to stand for more than about 10 or 15 minutes. (TR 279). He has difficulty walking to the bathroom. (TR 280). Plaintiff testified that he is half blind. (TR 289).

In summary, the medical record and lay testimony indicate that Mr. Thurston suffered a back injury at work in March 2002. While he has complained of severe and disabling pain since that injury, the x-ray studies, MRI studies, and clinical findings are totally unremarkable. In assessing plaintiff's residual functional capacity, Dr. Ellis gave full credit to plaintiff's physical complaints. However, even considering those limitations, which are essentially the same as those noted in the report from the nurse practitioner, the vocational expert was able to identify several specific sedentary work roles which a young man with a high school education could be expected to perform. The court believes that the Law Judge properly relied on the testimony of the vocational expert in assessing plaintiff's capacity for alternate work activity. The court finds substantial evidence to support the Commissioner's denial of plaintiff's claims for disability insurance benefits and supplemental security income benefits.

On appeal to this court, plaintiff makes several arguments as to why plaintiff believes the administrative consideration of his case was deficient. Mr. Thurston notes that the questioning of the vocational expert occurred prior to the receipt of the report from the nurse practitioner at the St. Luke Community Clinic. Plaintiff observes that in that report, it was noted that he suffers from edema of the lower extremities associated with standing for long periods, as well as depression. However, the court believes that the Law Judge properly accounted for plaintiff's inability to stand for long periods in his questioning of the vocational expert and in the ultimate finding that plaintiff is limited to a restricted range of sedentary work activities. As for the depression, the court notes that none of the other medical reports indicates the existence of depressive symptomatology. Furthermore, there is no suggestion that plaintiff's depression is so severe as to affect his capacity for work. There is every reason to believe that plaintiff's depression is merely situational and that it can be properly treated with appropriate medical intervention. Stated differently, the court must conclude that Mr. Thurston has failed to meet

the burden of proof in establishing that his nonexertional impairments affect his capacity to perform work-related activity.

Mr. Thurston also contends that the Law Judge improperly considered his testimony, and failed to give reasons for finding such testimony less than fully credible. However, the court believes that the Law Judge adequately addressed plaintiff's subjective complaints.

It is well settled that, in order to establish disability on the basis of pain, a claimant must demonstrate the existence of a medical impairment that reasonably could be expected to produce the pain alleged. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). See also 20 C.F.R. §§ 404.1529(b) and 416.929(b). Though it is not necessary that the claimant's medical evidence prove the severity of the pain alleged, Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994), it is necessary that the claimant demonstrate that he suffers from some problem which is capable of causing the subjective symptomatology of which the claimant complains. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).

It must again be noted that, in Mr. Thurston's case, there is absolutely no evidence of any physical condition or mechanical defect which could be expected to produce disabling pain. While plaintiff relies heavily on the reports from Dr. Ellis and the nurse practitioner, it is apparent that both medical sources fully credited plaintiff's subjective complaints in assessing the degree of his physical limitation. In any event, and more importantly, the Law Judge essentially credited the limitations cited by Dr. Ellis in questioning the vocational expert. Indeed, the court believes that the Law Judge gave plaintiff the benefit of the doubt in assessing the subjective elements in this case. The court concludes that plaintiff's argument in this regard is without merit.

Finally, plaintiff maintains that, in adopting the Law Judge's opinion as the final decision of the Commissioner, the Appeals Council failed to give adequate reasons for not requiring further

9

consideration of the case in light of the additional evidence which plaintiff had submitted in connection with his request for review. It is true that this court has held that it is sometimes necessary to remand a case to the Commissioner for further consideration when the Appeals Council fails to give reasons for concluding that such "interim" evidence is not such as to justify a change in the Law Judge's decision. See Alexander v. Apfel, 14 F. Supp. 2d 839 (W.D. Va. 1998). However, in Alexander, the court noted that remand is unnecessary when it is clear upon review of "interim" evidence that the Commissioner's underlying decision is, or is not, supported by substantial evidence. 14 F. Supp. 2d at 844, n.3.

In the instant case, the court does not believe that the evidence submitted by Mr. Thurston to the Appeals Council is such as to require additional consideration by the Law Judge. The new medical reports consist of referral notices from the St. Luke Community Clinic to a physical therapist and to the pain clinic at the University of Virginia Medical Center. There is no additional insight given as to the nature and severity of plaintiff's physical problems, and there is certainly no indication that any cause for severe and unrelenting back pain has been identified. The court finds no cause for remand of this case to the Commissioner for further consideration of these referral notices.

The court has concluded that the legal arguments advanced by plaintiff in opposition to the defendant's motion for summary judgment are without merit. The court concludes that the final decision of the Commissioner must be affirmed.

In affirming the final decision of the Commissioner, the court does not suggest that Mr. Thurston is totally free of pain and discomfort. Indeed, the regularity with which plaintiff has sought medical treatment despite meager financial circumstances, is an indication that plaintiff does experience some substantial measure of pain and discomfort. On the other hand, it must again be noted that no

doctor has identified any specific physical problems which could be expected to produce disabling pain and limitation. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Once again, it appears to the court that the Law Judge considered the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. Indeed, as previously noted, the court believes that the Law Judge gave Mr. Thurston the benefit of the doubt in this regard. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 27th day of January, 2006.

_____
United States District Judge